IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HELLS CANYON PRESERVATION COUNCIL,  )
a non-profit corporation            )
                               )   Civil No. 00-755-HU
       Plaintiff,         )
                               )
   v.                  )
                               )
U.S. FOREST SERVICE, DANIEL ROBERT  )
GLICKMAN, in his official capacity  )   FINDINGS AND
as Secretary of Agriculture, MIKE  )   RECOMMENDATION
DOMBECK, Chief United States Forest)
Service, HARV FORSGREN, in his    )
official capacity as Regional      )
Forester, KARYN L. WOOD, in her    )
capacity as Forest Supervisor for   )
Wallow-Whitman National Forest,    )
JACK BLACKWELL, in his official    )
capacity as Forest Supervisor for   )
the Payette National Forest, DALE   )
BOSWORTH, in his official capacity   )
as Regional Forester, Region 1,    )
BRUCE BURNHART, in his capacity as  )
Forest Supervisor for the Nez Perce)
National Forest                 )
                               )

1 -- FINDINGS AND RECOMMENDATION

                Defendants.                    )
    _____)

JAMIE B. JEFFERSON
WILD EARTH ADVOCATES
1624 SE 32nd Place
Portland, OR  97214

JULIA A. OLSON
WILD EARTH ADVOCATES
Presido Building 1004
San Francisco, CA  94129

                Attorneys for Plaintiff

KRISTINE OLSON
United States Attorney
THOMAS C. LEE
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
SW Third Ave
Suite 600
Portland, OR 97204-2902

VAL BLACK
Special Assistant United States Attorney
OFFICE OF GENERAL COUNSEL, USDA
1220 SW Third Avenue
1734 Federal Building
Portland, OR 97204

SAMUEL D. RAUCH, III
Senior Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Wildlife & Marine Resources Section
Ben Franklin Station
PO Box 7369
Washington, DC 20044-7369

                Attorneys for Defendants

HUBEL, Magistrate Judge.

    This matter is before the court on defendants' motion to
dismiss (#4, amended #42, supplemented #49).  For the following

2 -- FINDINGS AND RECOMMENDATION

reasons, defendants' motion should be granted.

## PROCEDURAL BACKGROUND

Plaintiff, the Hells Canyon Preservation Council ("HCPC"), is a non-profit corporation dedicated to the preservation of the Hells Canyon area in its natural condition.  Plaintiff and its members use the Hells Canyon National Recreation Area ("HCNRA") for recreational, scientific, and commercial purposes.

Plaintiff brings this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 - 576, the Hells Canyon National Recreation Area Act ("HCNRA Act"), 16 U.S.C. §§ 460gg-1 to 406gg-13, and the Endangered Species Act, 16 U.S.C. § 1531-1544, to obtain declaratory and injunctive relief requiring the United States Forest Service ("Forest Service") to engage in notice and comment rulemaking with respect to the regulations governing uses of the Hells Canyon National Recreation Area ("HCNRA") and to engage in formal consultation regarding newly listed fish in the HCNRA.

Congress enacted the HCNRA Act in 1975, establishing the Hells Canyon National Recreation Area, located generally along the Snake River in Eastern Oregon and Western Idaho.  The HCNRA Act requires the Secretary of Agriculture ("Secretary") to promulgate a Comprehensive Management Plan ("CMP") for the HCNRA

3 -- FINDINGS AND RECOMMENDATION

to provide for a broad range of land uses and recreational opportunities. 16 U.S.C. § 460gg-5(a). The Forest Service adopted a CMP for the

HCNRA after receipt of public comment and preparation of an Environmental Impact Statement.

In addition to the requirement that the Secretary promulgate a CMP, the HCNRA Act requires the Secretary to "promulgate . . . such rules and regulations as he deems necessary to accomplish the purposes of [the HCNRA Act which] shall include but are not limited to [standards and provisions governing certain uses of the HCNRA]." 16 U.S.C. § 460gg-7(a) - (e). In 1989, the Ninth Circuit Court of Appeals held that this section, rather than giving the Secretary discretion, mandated that the Secretary "promulgate nonduplicative regulations of the sort described by [Section 10]." Oregon Natural Resources Council v. Lyng, 882 F.2d 1417, 1427 (9th Cir. 1989), amended on other grounds, 899 F.2d 1565 (1990).

In response to this decision, the Forest Service adopted an "interim rule" applicable to public lands in the HCNRA. The "interim rule" was adopted without prior notice and comment and was made effective immediately upon publication, but was open to a subsequent sixty-day comment period. The "interim rule"

4 -- FINDINGS AND RECOMMENDATION

called for management of public lands in the HCNRA in a manner consistent with the CMP and with existing regulations of general applicability to Forest Service lands.  36 C.F.R. § 292.40-.43. The "interim rule" did not address use or development of private lands in the HCNRA.  After adopting this "interim rule", the Forest Service solicited and received comments, including comments from plaintiff HCPC.  On or about November 3, 1992, the Forest Service published two notices of proposed rule making in the Federal Register.  The first notice, published at 57 Fed. Reg. 51103, announced the Forest Service's intent to issue regulations governing uses of private lands in the HCNRA.  The Notice of Proposed Rulemaking was scheduled for publication in March of 1993, with the comment period to close in September, 1993.  The second notice announced the Forest Service's intent to adopt rules governing federal lands in the HCNRA.  The proposed rules were scheduled to become effective in June, 1993. 57 Fed. Reg. 51108.

In April of 1993, plaintiff filed suit in this court contending that the Forest Service failed to promulgate regulations addressing specific subsections of 16 U.S.C. § 460gg-7(a) to (e) (Section 10 of the HCNRA Act), or that the Forest Service had improperly deferred to the CMP for control of the activities specifically identified in those subsections.

5 -- FINDINGS AND RECOMMENDATION

<u>Hells Canyon Preservation Council v. Richmond</u>, CV 92-1432-ST (D. Or. Apr. 15, 1993).  Plaintiff sought an order requiring the Forest Service to promulgate permanent regulations.

On December 9, 1993, the court entered an order in the above case requiring the Forest Service to promulgate permanent regulations.  <u>Id</u>. (D.Or. Dec. 9. 1993).  The Forest Service later adopted permanent regulations for private and public lands pursuant to the court's order.  59 Fed. Reg. 30, 492 (June 13, 1994) (private land regulations); 59 Fed. Reg. 36,882 (July 19, 1994) (public land regulations).

Plaintiff filed the current action on June 5, 2000, challenging the new regulations.  On that same day, plaintiff submitted a 60-day notice letter pursuant to section 11(g)(2)(A) of the ESA, indicating that it would bring suit within 60 days unless the USFS initiated consultation with the National Marine Fisheries Service ("NMFS") and the Fish and Wildlife Service ("FWS") pursuant to sections 7(a)(1) and 7(a)(2) of the ESA.  On August 8, 2000, defendants sent HCPC a letter stating that the USFS intended to initiate consultation with NMFS and FWS regarding the regulations and the Comprehensive Management Plan for the HCNRA.  On August 30, 2000, plaintiff moved for leave to file an amended complaint to include claims for violation of the ESA.  Plaintiff filed its amended complaint including ESA claims

6 -- FINDINGS AND RECOMMENDATION

on September 12, 2000.    Currently before the court is
defendants' motion to dismiss plaintiff's amended complaint in
its entirety.

**STANDARDS**

A motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(6) addresses the sufficiency of the complaint.
On such a motion, the court must review the sufficiency of the
complaint.    <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).    The
court should construe the complaint most favorably to the
pleader:

> In evaluating the sufficiency of the complaint, we
> follow, of course, the accepted rule that the
> complaint should not be dismissed for failure to state
> a claim unless it appears beyond doubt that the
> plaintiff can prove no set of facts in support of his
> claim which would entitle him to relief.

<u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).    The allegations of
material fact must be taken as true.    <u>Moyo v. Gomez</u>, 40 F.3d
982, 984 (9th Cir. 1994).

A motion to dismiss brought pursuant to Federal Rule of
Civil
Procedure 12(b)(1) addresses the court's subject matter
jurisdiction.    The party asserting jurisdiction bears the burden
of proving that the court has subject matter jurisdiction over
its claims.    <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S.
375, 377 (1994).    Unlike a motion to dismiss for failure to

7 -- FINDINGS AND RECOMMENDATION

state a claim under Federal Rule of Civil Procedure 12(b)(6), a Rule 12(b)(1) motion can attack the jurisdictional allegations in the plaintiff's complaint regardless of whether the complaint otherwise sufficiently states a claim. See <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 201 (9th Cir. 1989). A challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may rely on affidavits or any other evidence properly before the court. <u>Dreier v. United States</u>, 106 F.3d 844, 847 (9th Cir. 1996).

The court may take judicial notice of matters of public record such as regulations and the record of their promulgation. <u>Marshall County Health Care Authority v. Shalala</u>, 988 F.2d 1221, 1226 (D.C. Cir. 1993). The court may also take judicial notice of the final judgment filed in <u>Hells Canyon Preservation Council v. Richmond</u>, 92-1432-ST (D. Or. August, 4, 1994), and the opinions and orders of other judges of this court. <u>Greene v. WCI Holdings Corp.</u>, 956 F. Supp. 509, 512 (S.D.N.Y. 1997), <u>aff'd</u> 136 F.3d 313 (2nd Cir. 1998). Taking such judicial notice "does not convert a Rule 12(b)(6) motion into one for summary judgment." <u>Mack v. South Bay Beer Distributors, Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986).

## DISCUSSION

I.  Plaintiff's First Claim

Plaintiff alleges that defendants failed to promulgate final regulations that govern the use and development of private land within the HCNRA because the final regulations for private lands do not meet the requirements of the HCNRA's mandate to protect and enhance the HCNRA's unique values.[1]  Plaintiff alleges that the regulations promulgated by defendants improperly defer to local, state, and federal laws.

Defendants contend that plaintiff's claim is not subject to judicial review under the APA, therefore, this court does not have subject matter jurisdiction over plaintiff's first claim and it must be dismissed.

The HCNRA Act contains no special provision for judicial review of actions taken by the USFS pursuant to the Act. Therefore, the court must rely on the provisions of the APA to provide for judicial review of HCNRA Act actions.  <u>See</u> <u>ONRC</u> <u>Action v. Bureau of Land Management</u>, 150 F. 3d 1132, 1135 (9th Cir. 1998) (when substantive statutes do not provide a right of action, a party alleging noncompliance with the statutes "can bring an action under the APA challenging an 'agency action.'"); 5 U.S.C. §§ 701-706.

The APA requires that the agency action being challenged

---

[1]    These regulations are found at 36 C.F.R. Part 292, Subpart E.

9 -- FINDINGS AND RECOMMENDATION

must be a "final agency action." <u>ONRC</u>, 150 F.3d at 1135.  The finality requirement is jurisdictional.  <u>Ecology Center, Inc. v. United States Forest Service</u>, 192 F.3d 922, 924-25 (9th Cir. 1999).  However, the judicial review provisions of the APA do not apply when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  The Supreme Court explained the preclusion of judicial review in <u>Heckler v. Chaney</u>, 470 U.S. 821 (1985) stating:

> [E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.   In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely.

<u>Id</u>. at 1830.

At issue in plaintiff's first claim for relief is the final agency action of the USFS promulgation of final regulations applicable to the use of private lands within the HCNRA on June 13, 1994 as required by section 10 of the HCNRA.  Defendants contend that with respect to plaintiff's first claim for relief, section 10(a) of the HCNRA Act is drawn so broadly that the court has no meaningful standard therein to evaluate the actions of the USFS in either promulgating or implementing is regulations.

The Ninth Circuit has held that "the test . . . of when a reviewing court lacks jurisdiction due to the provisions of §702(a)(2) is not whether a given statute viewed in the abstract lacks law to be applied, but rather, whether '*in a given case*' there is no law to be applied." <u>Strickland v. Morton</u>, 519 F.2d 467, 470 (9th Cir. 1975) (citation omitted) (emphasis in original).  Within the context of a given case, "[t]here is law to apply only if a specific statute limits the agency's discretion to act in the manner which is challenged." <u>City of Santa Clara</u>, 572 F.2d 660, 666 (9th Cir. 1978), <u>cert. denied</u>, 439 U.S. 859 (1978).

"When [the] agency action of which plaintiff complains fails to raise a legal issue which can be reviewed by the court by reference to statutory standards and legislative intent," the court lacks jurisdiction pursuant to § 702(a)(2).  <u>Id</u>.

Section 10(a) requires that:

> The Secretary shall promulgate . . . such rules and regulations as he deems necessary to accomplish the purposes of this subchapter.  Such rules and regulations shall include, but are not limited to -
>
> (a) standards for the use and development of privately owned property within the recreation area, which rules or regulations the Secretary may, to the extent he deems advisable, implement with the authorities delegated to him in section 460gg-6 of this title. . .;

16 U.S.C. 460gg-7(a).[2]

Plaintiff contends that the private land regulations promulgated by defendants (1) "improperly defer to local, state, and federal laws for control of uses and development of private land;" (2) fail to "govern use and development on private land, including . . . logging, livestock and grazing, construction, and the accumulation of trash and debris;" (3) fail to "protect and enhance the HCNRA's unique values." Complaint ¶¶ 45-47. However, as the Supreme Court explained "[t]he danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance." <u>Heckler</u>, 470 U.S. at 834. "That decision is in the first instance for Congress, and [the court must] therefore turn to [the Act] to determine whether in this case Congress has provided us with 'law to apply.'" <u>Id</u>.

Section 10 of the HCNRA Act requires only that the Secretary must promulgate such regulations "as he deems necessary to accomplish the purposes of [the] Act." 16 U.S.C. § 460gg-7. The next phrase "rules and regulations shall include," indicates

---

[2]    Section 460gg-6 provides that the Secretary may "acquire such lands or interests in land . . . as he deems necessary to accomplish the purposes of this subchapter by purchase with donated or appropriated funds with the consent of the owner, donation, or exchange." 16 U.S.C. 460gg-6(a).

that the Secretary's discretion is not boundless and totally without limit. <u>ONRC</u>, 882 F.2d at 1427. However, the Act itself requires only that the Secretary promulgate regulations which include "standards for the use and development of privately owned property." 16 U.S.C. § 460gg-7(a). The Act's use of the phrase "as he deems necessary" indicates that Congress intended to vest the Secretary with discretion concerning what the content of regulations would be and the terms of the regulations to set "standards" for use of privately owned property within the HCNRA. The Act provides no meaningful standards by which the content of the regulations governing privately owned land could be reviewed for an abuse of discretion. The decisions regarding promulgation of regulations governing use and development on private land, including logging, livestock and grazing, construction, and the accumulation of trash and debris, and whether or not these regulations protect and enhance the HCNRA's unique values, involve consideration of a number of factors including considerations of personnel, budget, land management, and a consideration of the overall scheme of environmental conservation and protection in the HCNRA. The application of these and other factors and the weight to be attributed to each in determining the regulations necessary is a matter that has been entrusted to the discretion of the

Secretary.  See Rank v. Nimmo, 677 F.2d 692, 700 (9th Cir. 1982) (language of the statute, governing Veteran's Administration loans, stating that the "Administrator may, at the Administrator's option, pay the holder of the obligation the unpaid balance of the obligation" evinced a clear intent by Congress to vest discretion of these matters with the Administrator, therefore the Veteran's Administration's decision not to pay the holder of the obligation was not reviewable). Accordingly, the court concludes that the Secretary's decisions regarding the regulation of the private lands in the HCNRA at issue are not judicially reviewable.[3]  Therefore, this court lacks jurisdiction.  Plaintiff's first claim for relief should be dismissed.[4]

---

[3]    Plaintiff cites a number of cases in support of its contention that this matter is reviewable. However, several of those cases addressed the application of 5 U.S.C. § 701(a)(1), not § 701(a)(2). Accordingly, the standards discussed in plaintiff's cases are inapplicable in to this discussion. Furthermore, plaintiff's cite to Greater Los Angeles Council on Deafness v. Baldridge, 827 F.2d 1353, 1361 (9th Cir. 1987), is unhelpful. Baldridge, analyzed whether an agency's regulations provided law to apply allowing for judicial review.  In this case, plaintiff challenges the regulations and therefore must rely entirely on the statute itself as a basis for review.

[4]    Because the court finds that plaintiff's first claim is unreviewable, the court need not, indeed cannot, determine whether the private land regulations fulfill the requirements of section 10(a) of the Act and the court declines to decide that issue.

II.  Plaintiff's Third Claim for Relief[5]

Plaintiff alleges in its third claim for relief that defendants' failure to promulgate final private and public land regulations which protect the values of the HCNRA constitutes a violation of Magistrate Judge Stewart's opinion and order in Hells Canyon Preservation Council v. Richmond, Civil No. 92-1432-ST (D. Or. December 9, 1993).  However, Judge Stewart entered a judgment dismissing 92-1432-ST on August 4, 1994, after the USFS promulgated its public and private lands regulations, in which the court stating "the Forest Service having promulgated final Private Land Regulations . . . and having promulgated final Public Land Regulations . . ., and it appearing to the Court that *the requirements of this Court's Order have been satisfied by these promulgations*," Plaintiff's remaining complaint and action are hereby DISMISSED . . . ." Defts. Exh. 109, p. 2.

Accordingly, the court finds that plaintiff's third claim for relief is barred by res judicata and defendants' motion to

---

[5]     At oral argument, plaintiff voluntarily dismissed its second claim for relief, that the public land regulations promulgated by defendants improperly defer to an authorized Forest Service officer to address restrictions on the size, type of craft, numbers, noise limits, durations, seasons or other matters, on the Snake and Salmon Rivers, which are necessary to protect the values of the HCNRA.  Accordingly, the court will not address that claim in this finding and recommendation.

dismiss should be granted with respect to this claim.

III.      Plaintiff's Fourth Claim for Relief

Claims for violations of the APA must rest on alleged violations of some substantive statute. <u>Oregon Natural Resources Council v. Thomas</u>, 92 F.3d 792 (9th Cir. 1996). There is no free-standing claim under the APA. <u>Id</u>. Therefore, because plaintiff's claims for relief for violations of the HCNRA Act should be dismissed, plaintiff's fourth claim alleging a violation of the APA premised on plaintiff's first three claims, should also be dismissed. Defendants' motion to dismiss should be granted with respect to plaintiff's fourth claim for relief.

IV.  Plaintiff's Fifth and Sixth Claims for Relief

A. The ESA Generally

Section 7(a)(2) of the ESA provides in pertinent part:

Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical. . . .

16 U.S.C. § 1536(a)(2).[6]

---

[6]    NMFS and FWS designate species as threatened or endangered pursuant to criteria set forth in ESA § 4(a) and

16 -- FINDINGS AND RECOMMENDATION

The ESA and its implementing regulations set out a detailed consultation process for determining the biological impacts of a proposed activity. 16 U.S.C. § 1536; 50 C.F.R. Part 402. The regulations require that an agency proposing an action must first determine whether the action "may affect" species listed as threatened or endangered. 50 C.F.R. § 402.14. If the agency determines that the action may affect listed species, the agency must then pursue some form of consultation with either FWS or NMFS. If, during informal consultation, the agency seeking to take action determines that the action "may affect but is not likely to adversely affect" a listed species and the consulting agency concurs in writing, consultation is complete. 50 C.F.R. § 402.13.[7] If no such concurrence is reached or if the agencies agree that the action is likely to adversely affect a listed species, the agency seeking to take action must undertake formal consultation with NMFS or FWS. 50 C.F.R. §§ 402.13-402.14.

Formal consultation requires FWS or NMFS to prepare a biological opinion including a conclusion as to whether the

(b). 16 U.S.C. § 1522(a) and (b).

[7] "Informal consultation is an optional process that includes all discussions, correspondence, etc., between the [consulting agency] and the [agency taking action], designed to assist that [agency taking action] in determining whether formal consultation . . . is required." 50 C.F.R. § 402.13(a).

proposed action is likely to jeopardize the continued existence of a listed species or result in the destruction of or adverse modification of critical habitat. 50 C.F.R. § 402.14. If NMFS or FWS concludes that the action is likely to jeopardize the continued existence of a listed species, NMFS or FWS must set forth a reasonable and prudent alternative to the action, if any. 50 C.F.R. § 1536(b)(3)(A).

On November 20, 1991, NMFS designated the Snake River Basin Evolutionarily Significant Unit ("ESU") of sockeye salmon as an endangered species. 56 Fed. Reg. 58619 (Nov. 20, 1991). On April 22, 1992, NMFS designated the Snake River spring/summer chinook ESU and the Snake River fall chinook ESU as threatened. 57 Fed. Reg. 14653 (April 22, 1992). On December 28, 1993, NMFS designated a "critical habitat," which included areas within the HCNRA, for these salmon. 58 Fed. Reg. 68543 (Dec. 28, 1993).

The USFS evaluated 2,806 different activities in the Wallowa-Whitman National Forest to determine whether they might affect salmon.[8] PRC, 30 F.3d at 1052. The USFS also initiated processes to update the existing LRMP to address habitat

_____

[8]    In 1990, the USFS promulgated and approved the Wallowa-Whitman National Forest Land and Resource Management Plan ("LRMP"). Pacific Rivers Council v. Thomas, 30 F.3d 1050, n.1 (9th Cir. 1994), cert. denied, 514 U.S. 1082 (1995) ("PRC"). The HCNRA Comprehensive Management Plan was incorporated into and became a part of the LRMP. Defts. Exh. 121.

requirements for salmonids and other sensitive fish species. These strategies are referred to as PACFISH and INFISH. On April 1, 1994, the USFS requested a consultation with NMFS on the PACFISH strategy. Defts' Exh. 112, p. 6. After a Ninth Circuit ruling, the USFS consulted with NMFS regarding the effects of the LRMP in addition to other consultations. PRC, 50 F.3d at 1057. On March 1, 1995, NMFS issued a biological opinion on the LRMP for eight national forests, including the Wallowa-Whitman. Deft. Exh. 119.

As a result of the private and public regulations for the HCNRA, the USFS developed a Wild and Scenic River Recreation Management Plan in October 1994. The plan amended portions of the Wallowa-Whitman LRMP. Defts. Exh. 113. During the planning process, the USFS prepared a biological assessment of the RMP and found that the plan may affect, but was not likely to adversely affect two of the three listed salmon species. Id. at 17. NMFS concurred with the USFS finding on September 26, 1994. Id. at 17-18.

On August 18, 1997, NMFS designated the Snake River steelhead ESU as threatened. 60 Fed. Reg. 43937 (Aug. 18, 1997). On September 16, 1997, the USFS reinitiated consultation on all eight of the LRMPs subject to the 1995 LRMP biological opinion, including the Wallowa-Whitman. On June 19, 1998, NMFS

19 -- FINDINGS AND RECOMMENDATION

issued a biological opinion for the LRMP concluding that the continued implementation of the LRMP was not likely to jeopardize any listed species or adversely modify any critical habitat for these species. Defts. Exh. 115.

On June 10, 1998, FWS designated the Columbia River bull trout distinct population segment as a threatened species. 63 Fed. Reg. 31647 (June 10, 1998). On June 15, 1998, the USFS requested consultation regarding the LRMP with FWS. Defts. Exh. 116. On August 14, 1998, the FWS issued a biological opinion finding that the continued implementation of the LRMPs was not likely to jeopardize the continued existence of the bull trout. Id.

On February 16, 2000, NMFS designated lands within the HCNRA as critical habitat for the steelhead. 65 Fed. Reg. 7764 (Feb. 16, 2000). In response, the USFS is in the process of amending the HCNRA Comprehensive Management Plan. Defts. Exh. 121, p. 2. On August 9, 2000, the USFS initiated informal consultations with NMFS and FWS regarding both the 1994 regulations and the amendments to the CMP. Mason Declaration, ¶¶ 1-2. The consultation is ongoing. Id. ¶ 3.

B.  Plaintiff's Fifth Claim for Relief

Plaintiff alleges in its fifth claim for relief that defendants failed to consult with the NMFS prior to promulgating

its private and public regulations in violation of section 7(a)(2) of the Endangered Species Act, 16 U.S.C. § 1536(a)(2). Complaint ¶ 67.

Defendants contend that portions of plaintiff's fifth claim are barred by the statute of limitations and the remainder of plaintiff's claim is moot.

"[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401. Plaintiff contends that defendants failed to consult with NMFS and FWS prior to promulgating its private and public regulations. The USFS promulgated the regulations on June 13, 1994, and July 19, 1994. Accordingly, in order to avoid the bar of the statute of limitations, plaintiff had to file its fifth claim regarding the public and private regulations before June 13, 2000, and July 19, 2000. However, plaintiff did not file the amended complaint containing these claims until August 30, 2000.

Plaintiff does not contend that its amended complaint relates back to its original complaint with respect to plaintiff's ESA claims, rather plaintiff contends that defendants failed to comply with the consultation requirements of the ESA in the wake of species listed since the regulations

21 -- FINDINGS AND RECOMMENDATION

were promulgated, therefore, the statute of limitations has not run.[9]

Plaintiff cites Waterwatch of Oregon v. United States Army Corps of Engineers, 2000 WL 1100059 (D. Or. 2000) in support of its contention.   In Waterwatch, defendant issued a permit allowing Boeing to construct and maintain an irrigation pump station in the Columbia River . Id. at *1.  The defendants amended the permit in 1975 and issued additional related permits in 1978 and 1995.  Id.  Although the court ultimately denied plaintiff's motion for summary judgment on its claim for failure to consult on the 1971-1978 permits, the court stated in a footnote that it disagreed with intervenor's argument that plaintiff's claim was barred by the statute of limitations.  Id. at * 10.  The court explained that "[p]laintiff's claims are

_____

[9]     Plaintiff also alleges that the six year statute of limitations period does not apply to the fifth claim for relief because plaintiff challenges the substance of an agency decision as exceeding agency authority.  Although the court recognizes that in Wind River Mining Corp. v. United States, 946 F.2d 710 (9th Cir. 1991), the Ninth Circuit recognized a narrow exception to the accrual of the statute of limitations, plaintiff does not meet the criteria.  Plaintiff's fifth claim for relief challenges an alleged procedural violation in adopting the regulations.  Wind River, makes clear that such claims must still be brought within six years of the decision, in this case the promulgation of the regulations at issue. Id. at 715.  "The grounds for [plaintiff's] challenges [would be] apparent to any interested citizen within a six-year period following promulgation of the decision . . . ." Id. Accordingly, plaintiff's alternative basis for avoidance of the statute of limitations is without merit.

timely in light of at least the following: The 1971 and 1978 permits are still in effect, the pump stations are still being operated, and changed circumstances exist, such as the listing of additional salmon and steelhead within the limitations period." Id. n. 13.

Defendants agree that the statute of limitations does not bar suits seeking to force an agency to initiate consultation over effects to a species listed within the statutory period even if the action that might affect newly listed species occurred prior to the statutory period.   Therefore, the defendants do not contend that plaintiff's claim that defendants failed to initiate consultation on the steelhead and bulltrout species listed within the last three years is barred by the statute of limitations.   The court agrees.   Waterwatch and other cases  suggest that an agency may have to initiate consultation on a preexisting permit if a new species is listed and if the agency has retained "discretionary Federal involvement or control" over the permit.  Waterwatch, 2000 WL 1100059 at *5-9.  Accordingly, an action for failure to consult regarding a newly listed species may be maintained within six years of the time the agency newly listed the species.   The steelhead were newly listed in the HCNRA in 1997, the bulltrout in 1998.  Accordingly, plaintiff's claim regarding failure to

23 -- FINDINGS AND RECOMMENDATION

consult on the CMP and the LMRA with respect to these species is not barred by the statute of limitations.

Defendants allege that although this portion of plaintiff's fifth claim for relief is not barred by the statute of limitations, it is moot. Defendants contend that because they commenced consultation with NMFS and FWS prior to the filing of plaintiff's amended complaint, plaintiff's claim for failure to consult on the 1994 regulations and new species is now moot.

Although neither the Ninth Circuit nor this district has addressed the issue of whether a claim for violation of the ESA § 7(a)(2) becomes moot when an agency commences the consultation process, the District of Arizona has issued three opinions which relate to the issue and the Tenth Circuit has addressed the issue as well.

In 1995, the District of Arizona addressed the USFS argument that plaintiff's claim for violation of section 7(a)(2) of the ESA was moot because the USFS "started consultation on the amendment of the eleven LRMPs for National Forests in the Southwest Region on the same date that plaintiffs filed their motion for summary judgment. Silver v. Babbitt, 924 F. Supp 976, 981, 985 (D. Az. 1995). In Silver, the USFS approved land and resource management plans ("LRMPs") for all national forests in the Southwest Region between July, 1985 and April, 1998. Id.

at 981.  The USFS conducted formal consultation with the FWS pursuant to § 7(a)(2) of the ESA.  In April, 1993, the Mexican Spotted Owl was listed as a threatened species under the ESA. Id.  In May, 1995, the USFS initiated informal consultation on "all relevant aspects of the Forest Plans," and stated that it "would move into formal consultation on these plans once amendments to the plans were developed by the USFS . . . ." Id. Although the USFS initiated formal consultation with FWS in July, 1995, the USFS made only site-specific consultation on the existing LRMPs.  Id.  The court examined the record and noted that USFS "failed to initiate consultation on the existing LRMPs," and that the USFS had "made only site specific consultations on the existing LRMPs."  Silver, 924 F. Supp. at 985.  The court held that plaintiffs' claim was not moot because "until the USFS commences a consultation on the existing LRMPs . . . it is in violation of Section 7(a)(2) of the ESA.  In addition, even if the USFS has begun consultation on the amendments . . . consultation on the entirety of the LRMPs [is required]."  Id. (citing PRC, 30 F.3d at 1056, n. 12).

In 1999, the District of Arizona again addressed the issue of whether or not plaintiffs' claim for violation of § 7(a)(2) was mooted because defendants began consultation.  Defenders of Wildlife v. Ballard, 73 F. Supp.2d 1094 (D. Az. 1999).  In

25 -- FINDINGS AND RECOMMENDATION

Ballard, plaintiffs alleged that defendants "failed to consult with the [FWS] prior to taking actions which may affect pigmy-owls and other endangered and threatened species as required by the ESA." Id. at 1096-97.  On reconsideration of the court's order, defendants argued that plaintiff's claim for violation of § 7(a)(2) of the ESA was moot because defendants had begun the required consultation.  Id. at 1117.  The court noted that "'mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant . . . free to return to his old ways.'" Id. (quoting United States v. Concentrated Export Ass'n., 393 U.S. 199, 203 (1968)).  The court recognized that a case may become moot if "subsequent events [have] made it absolutely clear that all the allegedly wrongful behavior [cannot] reasonably be expected to recur," and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id. (quotations omitted).  However, the court concluded, with little further analysis, that "until the [defendant] actually completes the consultations, there is still a live ESA controversy.  For example, [defendant] and FWS appear to be at odds regarding the proper scope of the consultation." Id.

The District of Arizona most recently addressed the issue

of mootness of a claim pursuant to ESA § 7(a)(2) in <u>Southwest</u>
<u>Center for Biological Diversity v. United States Forest Service</u>,
82 F. Supp.2d 1070 (D. Az. 2000).   In <u>Southwest Center</u>,
plaintiff sought declaratory judgment that the USFS failed to
fulfill its obligation to consult with FWS pursuant to ESA §
7(a)(2) before the USFS issued livestock grazing permits within
the Tonto National Forest.   <u>Id</u>. at 1071.   Defendants initiated
consultation with the FWS after the commencement of the suit.
<u>Id</u>. at 1072.   In light of the USFS initiation of consultation
with the FWS "both parties recognize[d] that the Forest Service
is no longer in violation of Section 7(a)(2) of the [ESA]." <u>Id</u>.
at 1078.   However, plaintiff continued to seek declaratory
judgment that the USFS was in violation of section 7(a)(2) prior
to its initiation of consultation . . . ." <u>Southwest Center</u>,
82 F. Supp.2d at 1078.   The USFS argued that plaintiff's section
7(a)(2) claim was moot because the agency had begun
consultation.   <u>Id</u>. at 1079.   The court noted that "courts should
not examine claims that become moot because of changed factual
circumstances during the litigation." <u>Id</u>. (citations omitted).
The court agreed that it would be academic for the court "to
order the Forest Service to engage in consultation as
[plaintiff's] complaint requests, when it has already done so."
<u>Id</u>.   Accordingly, the court held that the plaintiff's claim for

27 -- FINDINGS AND RECOMMENDATION

violation of § 7(a)(2) was moot and it declined to issue an advisory opinion.  Southwest Center, 82 F. Supp.2d at 1079.

The Tenth Circuit addressed the issue of whether or not a plaintiff's claim for violation of ESA § 7(a)(2) was moot when the Bureau of Land Management ("BLM") completed informal consultation with FWS after they implemented their action and after suit was filed.  Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724 (10th Cir. 1997).  The Court noted that the relief plaintiff requested was a declaration that defendants violated ESA § 7(a)(2) and an order requiring the BLM to consult with FWS.  Id. at 727.  The court held that plaintiff's claims were moot because "the relief sought has been obtained."  Id. (quotations omitted).  In reaching its holding, the court reasoned that:

> A federal court has not power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it.  Thus to be cognizable, a suit must be a real and specific controversy admitting of specific relief through a decree of conclusive character.  If an event occurs while a case
> is pending that heals the injury and only prospective relief has been sought, the case must be dismissed.

Id. at 727.  The court noted that plaintiff failed to explain "how any injury still flows from the alleged violation."  Id. at 729.  The court noted that because defendant had engaged in informal consultation with FWS, "if [plaintiff] still suffers

some alleged injury as a result of the [program's] implementation, that injury must arise the content of the [program], not from the BLM's delay in completing consultation with FWS." Id.

Although the District of Arizona appears to have conflicting opinions regarding whether commencing consultation is sufficient to moot a claim or whether completion of consultation is required, this court believes that the better reasoned position is that commencement of consultation is sufficient to moot plaintiff's claim for failure to consult as required by section 7(a)(2) of the ESA. The reasoning of Southwest Center, Silver, and Southern Utah, is more in line with the requirement that federal courts not issue advisory opinions and that events may occur during the pendency of an action which rectify the injury alleged.

Plaintiff argues that its claim is not moot because the relief plaintiff seeks differs from the relief sought in Southwest Center. Plaintiff in this matter seeks an order requiring defendants to complete formal consultation under the ESA for all listed fish in the HCNRA, whereas plaintiffs in Southwest Center sought only a declaration that the agency failed to comply with the consultation requirement and an order requiring them to initiate consultation. Although plaintiff

29 -- FINDINGS AND RECOMMENDATION

seeks different relief in this case, that is not sufficient to save plaintiff's claim from dismissal.

Plaintiff seeks an order requiring defendants to complete formal consultation under the ESA. The Regulations relating to the ESA consultation requirement allow an agency to commence informal consultation with the required agency at the consulting agencies' choice. 50 C.F.R. § 402.13(a) ("informal consultation is an optional process"). Furthermore, the regulations provide that an agency need not initiate a formal consultation if "as a result of informal consultation . . . under § 402.13, the Federal agency determines, with the written concurrence of the Director, that the proposed action is not likely to adversely affect any listed species or critical habitat." 50 C.F.R. § 402.14(b)(1); see also 50 C.F.R. § 402.13 ("If during informal consultation it is determined by the Federal agency, with the written concurrence of the Service, that the action is not likely to adversely affect listed species or critical habitat, the consultation process is terminated, and no further action is necessary.") Defendants in this action have commenced informal consultation, therefore, in accordance with the regulations, defendants will only have to proceed to formal consultation if the informal consultation reveals that the 1994 regulations are "likely to adversely affect any listed species

30 -- FINDINGS AND RECOMMENDATION

or critical habitat." The court declines to order defendants to complete formal consultation at this time, because no finding of any kind has been made in the informal consultation regarding the effect of the 1994 regulations on the newly listed species or habitats. Plaintiff's request for an order requiring defendants to complete formal consultation is premature. See Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733, 735 (1998) ("whether judicial intervention would inappropriately interfere with further administrative action" is a factor to be considered in determining the ripeness of a controversy because "premature review "denies the agency an opportunity to correct its own mistakes and to apply its expertise").

To the extent that plaintiff seeks a declaration that defendants were in violation of ESA § 7(a)(2) for failing to consult prior to implementation of the regulations, its claim is moot because defendants have commenced information consultation. To the extent that plaintiff seeks an order requiring defendants to complete formal consultation, their claim is premature. Accordingly, defendants' motion to dismiss should be granted with respect to plaintiff's fifth claim for relief.

C.   Plaintiff's Sixth Claim for Relief

In its sixth claim for relief, plaintiff alleges that defendants violated their duty under section 7(a)(1) of the ESA

to conserve listed fish within the HCNRA "by continuing to manage the HCNRA in a manner which allows the degradation of habitat despite clear statutory directives to the contrary, including but not limited to their failure to promulgate regulations which properly manage, control, and limit grazing activities." Complaint, ¶ 72. Plaintiff requests that the court order defendants to engage in renewed notice and comment rule-making that fulfills their section 7(a)(1) duty to conserve listed fish and their habitat within the HCNRA.

Defendants contend that the portion of claim six relating to the promulgation of regulations in 1994 is beyond the statute of limitations for the same reasons that plaintiff's claim that these regulations violated section 7(a)(2) of the ESA was beyond the statute of limitations as discussed earlier. The court agrees. To the extent that plaintiff seeks to challenge the promulgation of the regulations in 1994 as violative of section 7(a)(1) of the ESA, the court finds that plaintiff's claim is beyond the six year statute of limitations period. Defendants' motion to dismiss should be granted with respect to this portion of plaintiff's sixth claim for relief.

Defendants contend that the remainder of claim six should be dismissed for failure to state a claim because section 7(a)(1) "does not require an action agency to undertake any

*specific* activity with regard to listed species." Reply Memorandum, p. 12 (emphasis in original).

Section 7(a)(1) of the ESA states that "[f]ederal agencies shall, in consultation with and with the assistance of the Secretary, utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 1533 of this title." 16 U.S.C. § 1536(a)(1). Agencies have discretion in determining "how best to fulfill the mandate to conserve." Waterwatch, 2000 WL 1100059 at *11 (citing Pyramid Lake Paiute Tribe of Indians v. United States Dept. of Navy, 898 F.2d 1410, 1418 (9th Cir. 1990)); see also Coalition for Sustainable Resources v. United States Forest Service, 48 F. Supp.2d 1303, 1315 (D. Wyo. 1999) ("The case law is well settled that federal agencies are accorded discretion in determining how to fulfill their §1536(a)(1) obligations.") This discretion is evidenced in the definition of conservation provided in the ESA. Coalition for Sustainable Resources, 48 F. Supp. at 1315.[10] The regulations

_____

[10] The ESA defines conserve, conserving and conservation to mean:

> to use and the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no

also support this grant of discretion, "in particular, 50 C.F.R. § 402.14(j) states that FWS may present the federal agency with a biological opinion, but such opinions are not mandatory, they are advisory only - therefore, how to implement 'conservation' is ultimately left to the discretion of the agency." Id. Finally, the FWS stated in the Federal Register when adopting 50 C.F.R. § 402.14(j) that § 7(a)(1) "does not mandate particular actions to be taken by Federal Agencies to implement [§ 7(a)(1)]." 51 Fed. Reg. 19926 (June 3, 1986).

Moreover, the parties do not dispute that section 7(a)(1) is directed at agency programs, not agency actions. This distinction is clear on the face of the statute. Section 7(a)(1) requires federal agencies to "carry out *programs* for the conservation of" listed species, whereas section 7(a)(2) requires that agencies consult regarding "any *action*." 15 U.S.C. § 1536(a)(1) and (2).

Defendants contend that plaintiff's sixth claim for relief

---

longer necessary. Such methods and procedures include, but are not limited to, all activities associated with scientific resources management such as research, census, law enforcement, habitat acquisition and maintenance, propagation, live trapping, and transplantation, and, in the extraordinary case where population pressures within a given ecosystem cannot be otherwise relieved, may include regulated taking.

16 U.S.C. § 1532(3).

34 -- FINDINGS AND RECOMMENDATION

must be dismissed because plaintiff seeks an order requiring defendants to take a specific (as yet unidentified) action with respect to the 1994 regulations in order to comply with ESA § 7(a)(1).

Plaintiff alleges that it does not seek a specific action. However, plaintiff's request for an order requiring defendants to engage in another notice and comment rule-making with respect to the 1994 regulations seeks to challenge a specific action, promulgation of the regulations, rather than the defendants' forest management program as a whole. As this court explained in rejecting plaintiff's argument that the Army Corps of Engineers should have denied an irrigation permit in order to comply with its general conservation duties under § 7(a)(1):

> While it might be desirable for the Corps to have a more organized approach to carrying out programs for the conservation of listed species, and for the Corps to have a conservation program applicable to pump station permits, it is clearly beyond this court's authority to order that any specific conservation measure to be undertaken.

Waterwatch, 2000 WL 1100059 at *11 (citing Coalition for Sustainable Resources 48 F. Supp.2d at 1316). See also Grant School Dist. No. 3 v. Dombeck, Civ. No. 99-1236-AA (D. Or. April 5, 2000) ("Section 7(a)(1) does not contain a mandatory duty to adopt specific programs or measures, or even to consider certain programs or measures.) Accordingly, to the extent that

35 -- FINDINGS AND RECOMMENDATION

plaintiff seeks an order that defendants violated their duties under ESA § 7(a)(1) for failing to take a specific action, defendants' motion to dismiss claim six should be granted.

Plaintiff also raises a procedural allegation with respect to ESA § 7(a)(1).  Plaintiff alleges that both sections 7(a)(1) and 7(a)(2) of the ESA require defendants to consult with FWS and NMFS and that because defendants did not consult with FWS or NMFS regarding the 1994 regulations in violation of section 7(a)(2), defendants also are violation of the consultation requirement of section 7(a)(1).

As the court explained earlier, section 7(a)(1) is directed at agency programs, not specific actions.  The USFS consulted with NMFS and FWS regarding the LRMPs and the PACFISH and INFISH programs for the HCNRA.  As this court explained in Waterwatch, an agency can defeat a section 7(a)(1) claim by showing that it has a program for the conservation of listed species and that they consulted with the appropriate agency regarding that plan. Waterwatch, 2000 WL 1100059, at * 11.  Defendants have a conservation program in place directed at the listed fish which they developed in consultation with NMFS and FWS.  Accordingly, the portion of plaintiff's claim alleging a procedural violation

of section 7(a)(1) of the ESA should also be dismissed.[11]

Defendants' motion to dismiss the entirety of claim six for failure to state a claim upon which relief can be granted should be granted.

### CONCLUSION

In accordance with the above opinion, defendants' motion to dismiss should be granted.

### SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due February 14, 2001.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due February 28, 2001, and the review of the Findings and Recommendation will go under advisement on that date.

DATED this   30th   day of January, 2001.


                                    /s/
                              Dennis James Hubel
                              United States Magistrate Judge

_____

[11]    Defendants also contend that portions of plaintiff's sixth claim for relief should be dismissed because they are barred by res judicata.  Because the court finds that plaintiff's sixth claim for relief should be dismissed on other grounds, the court declines to rule on the res judicata issue.

37 -- FINDINGS AND RECOMMENDATION

38 -- FINDINGS AND RECOMMENDATION