IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HELLS CANYON PRESERVATION
COUNCIL,

        Plaintiff,

    vs.

U.S. FOREST SERVICE; ANN
VENEMAN, in her official
capacity as Secretary of
Agriculture; DALE BOSWORTH,
Chief, United States Forest
Service; HARV FORSGREN, in his
official capacity as Regional    Civil No. 00-755-HU
Forester; KARYN L. WOOD, in her
capacity as Forest Supervisor    FINDINGS AND RECOMMENDATION
for Wallowa-Whitman National
Forest; JACK A. BLACKWELL, in
his official capacity as
Regional Forester, Region 4;
DAVID F. ALEXANDER, in his
capacity as Forest Supervisor
for the Payette National Forest;
KATHLEEN McALLISTER, in her
official capacity as Regional
Forester, Region 1; BRUCE
BURNHART, in his capacity as
Forest Supervisor for the Nez
Perce National Forest,

        Defendants.
_____

PAGE 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

This matter is before the court on plaintiff's and defendants' cross-motions for summary judgment (docs. 177 and 190), and defendants'(collectively, the "USFS") motion to strike plaintiff's expert witness declarations (doc. 214).    Defendant-intervenor Wallowa County, Oregon, has filed memoranda in support of the USFS' motion for summary judgment.

### Factual Background of the Case

The Hells Canyon National Recreation Area Act (the Act), 16 U.S.C. §§ 460gg *et seq.*, was enacted in 1975.  Section 7 of the Act requires the Secretary of Agriculture to manage the Hells Canyon National Recreation Area (the Recreation Area) in a manner compatible with the Act's objectives.    The Act's objectives include (1) maintenance and protection of rivers, fish and wildlife habitat, archeological, paleontologic, and historic sites, and (2) conservation of scenic, wilderness, cultural, scientific and other values contributing to the public benefit and the preservation, especially in Hells Canyon itself, of all features and peculiarities believed to be biologically unique (including rare and endemic plant species, rare combinations of aquatic, terrestrial, and atmospheric habitats, and diverse ecosystems). 16 U.S.C. § 460gg-5.

Section 10 of the Act directs the Secretary to promulgate "such rules and regulations as he deems necessary to accomplish the

purposes" of the Act, and specifies five subjects under which the Secretary must promulgate regulations. 16 U.S.C. § 460gg-7. By 1981, the Secretary had adopted a comprehensive management plan (CMP), but had not promulgated rules or regulations. In 1988, plaintiff and others brought an action to compel the Secretary to promulgate rules and regulations as required by the Act. In Oregon Natural Resources Council v. Lyng, 882 F.2d 1417, 1428 (9th Cir. 1989), the Ninth Circuit held that the Secretary had violated non-discretionary duties under the Act, and remanded the action to the district court for entry of an order directing the Secretary to promulgate the required regulations under § 10 of the Act.

On October 5, 1989, the USFS published "interim" regulations in the Federal Register, 54 Fed. Reg. 41092 (October 5, 1989), now codified at 36 C.F.R. § 292.40 et seq. These interim regulations, promulgated without public notice and comment, were effective immediately.

In 1992, plaintiff in this case filed an earlier, separate action in federal district court seeking a declaration that the interim regulations did not comply with the notice and comment rulemaking required by the Administrative Procedure Act, 5 U.S.C. § 551 et seq. (APA), improperly deferred to the CMP for regulation of activities within the Recreation Area, and failed to satisfy the requirements of § 10 of the Act. Plaintiff also sought to compel the USFS to promulgate final rules, replacing the interim

regulations, as required by the Act and by the Ninth Circuit in Lyng.

In 1993, this court ordered the USFS to publish, allow comment on, and promulgate final private and public land regulations under § 10 of the Act. Hells Canyon Preservation Council v. Richmond, 841 F.Supp. 1039 (D. Or. 1993). The court held that the USFS was "bound by congressional mandate to promulgate final regulations which are aimed at enhancing the recreational and ecological values unique to [the Act and to] ... promulgate final regulations which protect the very values which are being compromised by the failure to regulate." Id. at 1047.

On December 14, 1993, the USFS published in the Federal Register proposed rules governing private land in the Recreation Area. 56 Fed. Reg. 65300, *now codified at* 36 C.F.R. § 292.20 *et seq.* On February 10, 1994, plaintiff submitted comments on the proposed rules. In the comments, plaintiff identified deficiencies such as the absence of any provisions that enabled the monitoring of private land uses or that implemented standards by which those uses could be monitored. Plaintiff contended that the proposed rules violated the Act by deferring to existing local, state, and federal land use plans rather than promulgating standards specific to the use and development of private land within the Recreation Area, as required by 16 U.S.C. §§ 460gg-4 and 460gg-7.

On June 13, 1994, the USFS published final regulations in the

PAGE 4 - FINDINGS AND RECOMMENDATION

Federal Register.  59 Fed. Reg. 30492.  Plaintiff alleges in its complaint that these regulations fail to cure the deficiencies raised by plaintiff in its comment letter, and further fail to comply with the requirements of the Act or this court's previous orders.

<u>Procedural Background of the Case</u>

Plaintiff filed this action on June 5, 2000, alleging, *inter alia,* that defendants acted arbitrarily and capriciously under the APA in promulgating final regulations that do not provide adequate standards for the use and development of privately owned property within the Recreation Area. Plaintiff contends that the only specific requirements are those that prohibit commercial operation of solid waste disposal sites and open pit mining, limit extraction sites to two acres, require screening for new or replacement structures, require utility lines to be placed underground, regulate minimum lot sizes, and govern the placement of new structures. Plaintiff alleges that with regard to all other uses and development that might affect ecological or other resources of the Recreation Area, "the regulations defer to or incorporate existing local, state and federal laws of general applicability and fail to address the special values for which [the Act] was established." Plaintiff's Second Amended Complaint, ¶ 35.

Plaintiff particularly argues the failure of the regulations to ensure that the ecological impact of livestock grazing on

private lands conforms to the statutory mandates intended to protect the Imnaha River, a designated Wild and Scenic River that provides spawning, rearing and migration habitat for spring/summer and fall run Chinook, bull trout, sockeye and steelhead, all of which are threatened or endangered. Plaintiff further argues that other unregulated uses on the private lands, including logging, construction of roads, ditches, fences, and structures; field burning; herbicide and pesticide use; and accumulation of trash and debris, have resulted in "significant and enduring damage to wildlife, aesthetic and natural recreational qualities, and unique attributes of the [Recreation Area] and are incompatible with the provisions of [the Act.]" Plaintiff's Second Amended Complaint, ¶ 37.

In January 2001, this court entered Findings and Recommendation recommending that all of plaintiff's claims be dismissed. After objections were filed, on March 30, 2001, Judge King adopted part of the Findings and Recommendation, but ordered that the motion to dismiss be denied with respect to the first and part of the fourth claims for relief. These are the claims asserted pursuant to § 10 of the Act and to the APA.

Thereafter, this court granted plaintiff's motion to amend the first amended complaint to add a claim under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"), alleging that the USFS did not conduct an Environmental Assessment

("EA")and /or prepare an Environmental Impact Statement ("EIS") for the proposed private land regulations when they were promulgated in 1994.  NEPA requires federal agencies to prepare an EIS for all major actions significantly affecting the quality of the environment. 42 U.S.C. § 4332(2)(c); 40 C.F.R. § 1508.27(b)(7), 1508.25(a).

<u>Discussion</u>

Plaintiff contends that: (1) the 1994 Private Land Regulations ("the Regulations") are arbitrary and capricious for failing to meet the objectives and purpose of the Act; and (2) the USFS failed to comply with NEPA by not performing an environmental analysis when it promulgated the Regulations.

The USFS denies plaintiff's contentions and argues that: (a) the Regulations fulfill all the requirements of § 10 of the Act; and (b) plaintiff's NEPA claim is invalid, first because NEPA does not apply to the promulgation of the Regulations, and second because any NEPA claim is barred by the applicable six-year statute of limitations.

For the reasons stated below, I conclude that the Regulations constitute a major federal action that may have a significant effect on the physical environment within the Recreation Area; that the USFS unreasonably failed to conduct an appropriate environmental evaluation of the impact of the Regulations; that the time for asserting the NEPA claim began accruing upon the

PAGE 7 - FINDINGS AND RECOMMENDATION

promulgation of the Regulations, and not earlier; and that the plaintiff filed this action within six years of the promulgation of the Regulations. This court has previously found that the assertion of the NEPA claim in plaintiff's second amended complaint relates back to the filing of the original complaint. Opinion and Order, September, 2001, pp. 16-17. Accordingly, I conclude that: (1) NEPA applies to the promulgation of the Regulations; (2) the USFS did not comply with NEPA's requirements for performing an EA, and thereafter, if appropriate, an EIS, as part of the rule-making process; and (3) plaintiff's NEPA claim is not time-barred.

Based on these findings, I conclude that it is premature to decide the issues relating to the substance of the Regulations already promulgated by the USFS pending the USFS' compliance with NEPA. A judicial determination whether the Regulations are consistent with the Act, or are arbitrary and capricious, necessarily awaits an administrative record established after completion of an appropriate environmental evaluation done in accordance with NEPA's procedural requirements. The court cannot evaluate the outcome of the USFS' reconsideration of the Regulations, until the USFS has complied with NEPA. *See* <u>Jones v. District of Columbia Redevelopment Land Agency</u>, 499 F.2d 502, 512-513 (D.C. Cir. 1974):

> It may be that the [EIS] will, in the end, not move the agency from adherence to decisions it has already made. But it is not for the courts to prejudge. So long as the *status quo* is maintained, so long as the environmental

PAGE 8 - FINDINGS AND RECOMMENDATION

impact statement is not merely a justification for a *fait accompli*, there is a possibility that the statement will lead the agency to change its plans  in ways of benefit to the environment.  It is this possibility that the courts should seek to preserve.

*See also* <u>Realty Income Trust v. Eckerd</u>, 564 F.2d 447, 457 (D.C. Cir. 1977)(courts should not prejudge the reconsiderations that agencies will make once the full environmental consequences of the action have been determined).[1]

My findings regarding plaintiff's NEPA claim do not rely on any of plaintiff's expert witness declarations.  The USFS' motion to strike those declarations is therefore denied as moot. Plaintiff may choose to submit the declarations to the USFS to be considered as part of the USFS' environmental evaluation under NEPA.

<u>Standard of Review</u>

Generally, in reviewing cases under the APA, the court must determine whether the final agency action was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. <u>Marsh v. Oregon Natural Resources Council</u>, 490 U.S. 360,

---

[1]  It is noteworthy that the essence of plaintiff's claim that the Regulations are arbitrary and capricious is defendants' failure to conduct "any environmental analysis that addresses private land uses, which are known and have been known by the Forest Service to degrade HCNRA values." Pl. Memo. in Support of Motion for Summary Judgment, p. 1.  If NEPA is not applicable to the Regulations, the type of environmental analysis demanded by plaintiff was not legally required.  Such a conclusion would substantially undercut plaintiff's assertion that the Regulations promulgated by the Forest Service were arbitrary and capricious.

PAGE 9 - FINDINGS AND RECOMMENDATION

376-77 (1989).  However, the Ninth Circuit has adopted the less deferential reasonableness standard in reviewing agency decisions regarding the applicability of NEPA, and any decision not to conduct a NEPA analysis.  <u>Northcoast Environmental Center v. Glickman</u>, 136 F.3d 660, 665-66 (9th Cir. 1998).

<u>Is NEPA Applicable to the Regulations?</u>

NEPA requires that federal agencies prepare an EIS for all major federal actions significantly affecting the quality of the human environment.  42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.27(b)(7), 1508.25(a).  If an agency action "may affect" the environment, the agency may prepare an EA to determine whether potential environmental impacts may be significant, thereby requiring an EIS.  40 C.F.R. § 1501.3.  The preparation of an EA and/or an EIS requires agencies to take a hard look at the environmental consequences of the action, explore and evaluate reasonable alternatives, and explain its reasons for taking the particular action.  <u>Robertson v. Methow Valley Citizen's Council</u>, 490 U.S. 332, 348 (1989).  NEPA's goals are: (1) to ensure the agency will have detailed information on significant environmental impacts when it makes its decisions; and (2) to guarantee that this information will be available to the public.  <u>Id</u>. at 349-50.

Plaintiff contends that the promulgation of the Regulations constituted a "major federal action" that may affect the environment, thereby requiring a NEPA analysis.  The Council on

PAGE 10 - FINDINGS AND RECOMMENDATION

Environmental Quality ("CEQ") regulations include within the categories of major federal action, the "adoption of official policy, such as rules and regulations, and interpretations adopted pursuant to the APA." 40 C.F.R. § 1508.18. *See* Scientists' Institute for Public Information v. Atomic Energy Commission, 481 F.2d 1079, 1088 (D.C. Cir. 1973) ("The legislative history of the Act indicates that the term 'actions' refers not only to construction of particular facilities, but includes 'project proposals, proposals for new legislation, regulations, policy statements, or expansion or revision of ongoing programs'"); Sierra Club v. Penfold, 857 F.2d 1307, 1313 (9th Cir. 1988). If the Regulations do constitute "major federal action," plaintiff must only raise substantial questions whether the Regulations may have a significant environmental impact in order to trigger a NEPA analysis. Greenpeace Action v. Franklin, 14 F.3d 1324, 1333 (9th Cir. 1994).

The record before the court establishes that the USFS had been aware for years before the promulgation of the Regulations of the potential environmental impact arising from the use of feedlots and cattle-grazing on private lands within the Recreation Area in the vicinity of the Imnaha river. Representative parts of the record include: 1977-AR Supp. 1-V6, 2209 (feedlots close to the Imnaha riverbanks pose a river pollution problem); 1979-AR Supp. 1-V6, 2284 (advice regarding the diversion of runoff to and from feedlots

into ponds or other areas not connected to moving water); 1979-AR Supp. 1-V7, 2611, 2637, 2638 (private landowners' use of herbicides/pesticides); 1979-AR Supp. 2, 651,660 (link between grazing and deterioration of vegetation, soils, water quality and recreational quality within the Recreation area); 1990-AR Supp. 1-V16, 4701W (streams may have been damaged by livestock grazing).

On this record, it would appear that the Regulations, promulgated to address and set policy regarding the feedlot and grazing activities, constitute major federal action that may affect the environment, thereby triggering the requirement of a NEPA analysis.

The USFS, however, contends and cites authority for the proposition that NEPA does not apply because: (1) the USFS had no discretion to impose direct land use regulations upon the owners of the private land within the Recreation Area; (2) the alleged environmental impacts within the Recreation Area are not caused by any affirmative actions taken by the USFS; (3) inaction by the USFS cannot trigger NEPA; and (4) the USFS regulations preserve or improve the physical environment and therefore do not trigger a NEPA analysis. The USFS sums up its argument as follows: "Because private land regulations under the HCNRA Act can have no environmental impacts other than a very indirect or gradual improvement in environmental conditions on private lands, NEPA does not apply at all to their promulgation by the Secretary." USFS

PAGE 12 - FINDINGS AND RECOMMENDATION

Memo. in Support of Motion for Summary Judgment, p. 32.

I reject these arguments, each of which I discuss below. There is no record before the court of any environmental evaluation by the USFS to support or contradict its conclusion that the Regulations can have no environmental impacts other than an indirect or gradual improvement on private lands. Moreover, the issue is whether the private land regulations will have significant environmental impacts on the Recreation Area as a whole, not just on the private land within the Recreation Area. NEPA's purpose is to provide the procedural safeguards to ensure that the USFS' position, as described above, is supportable and justified. The authorities cited by the USFS are not to the contrary, and are readily distinguishable from the circumstances confronting the USFS here.

(1)  <u>Discretionary Acts</u>.

The USFS relies on <u>Sierra Club v. Babbitt</u>, 65 F.3d 1502, 1512 (9th Cir. 1995), for the proposition that "the statute'[s] procedural requirements are triggered by a discretionary federal action" and no such discretionary action exists here. In <u>Babbitt</u>, before the enactment of NEPA, the Bureau of Land Management (BLM) had entered into a reciprocal right-of-way agreement with a logging company granting the company the use of certain existing logging roads and permitting the construction of new roads over BLM land, subject to three specified restrictions. The court held that NEPA

PAGE 13 - FINDINGS AND RECOMMENDATION

compliance was not triggered because, under the right-of-way agreement, the BLM lacked the discretion to influence the private actions of the grantee of the right-of-way, and to halt or limit the right-of-way activities, except as prescribed by the specific restrictions. The BLM was bound to act only in accordance with the limited restrictions contained in the right-of-way agreement.

Here, unlike in <u>Babbitt</u>, the Act requires the USFS to promulgate regulations for the use and development of private land within the Recreation Area. 16 U.S.C. § 460gg-7; <u>Hells Canyon Preservation Council v. Richmond</u>, 841 F.Supp. at 1046. The USFS has the discretion and, having been compelled by this court to do so, has now exercised that discretion to regulate the use to which private land in the Recreation Area may be put, by adopting rules governing, *inter alia*, the commercial operation of solid waste disposal sites, open pit mining, extraction sites, new or replacement structures, underground utility lines, and minimum lot sizes

Likewise, the USFS' reliance on <u>Ka Makani 'O Kohala Ohana v. Water Supply</u>, 295 F.3d 955 (9th Cir. 2002), is misplaced. The case involved a state water transmission project. The court held that while federal funding of a state or local project may give rise to a major federal action, the particular level of federal funding made available to the state water project (approximately 2 percent of the estimated total cost) did not transform the project into a

PAGE 14 - FINDINGS AND RECOMMENDATION

major federal action.  "Marginal federal action will not render
otherwise local action federal." Id. at 960.  The court also held
that the fact that a federal agency may have played an advisory
role in the planning of the project because of its expertise and
involvement in preliminary research studies did not transform the
project into a federal action, "because the [agency] was not placed
in a decision-making role." Id.  The power of an agency "to give
non-binding advice to a non-federal actor" does not constitute
major federal action." Id.

Unlike the federal agency in Ka Makani, the USFS is not acting
in a merely advisory role.  As this court stated in Hells Canyon
Preservation Council v. Richmond:

> [T]he Forest Service is bound by Congressional mandate to
> issue final regulations which are aimed at enhancing the
> recreational and ecological values unique to the HCNRA.
> The Forest Service may have broad latitude to determine
> exactly how those values are to be protected.
> Nonetheless, it must promulgate final regulations which
> protect the very values which HCPC claims are being
> compromised by the failure to regulate, and it must do so
> within a reasonable time frame.  There are no concerns
> here that a non-party may choose to ignore or selectively
> comply with the regulations once they are issued.  The
> final regulations will bind all users of the HCNRA.

841 F.Supp. at 1047(emphasis added).

The USFS' "discretionary acts" argument is without merit.  The
USFA not only had the discretion to regulate the uses to which the
private land within the Recreation Area was put, it was required to
promulgate final appropriate regulations. It ultimately exercised
its discretion by directly regulating some of the private land uses

PAGE 15 - FINDINGS AND RECOMMENDATION

and deferring to state and local regulations as to other private uses.

(2)  Causation.

The USFS contends that NEPA does not apply because, even if the Regulations constitute "major federal action," there is no cause and effect between the Regulations and any significant environmental impacts, or the causal relationship is too attenuated to require NEPA analysis.  The essence of this argument is that any environmental impacts are caused by the actions of the owners of the private lands within the Recreation Area, not by any regulations promulgated by the agency.  I am not persuaded by the cases relied upon by the USFS to support this argument.

In Metropolitan Edison Co. v. People Against Nuclear Energy, 460 U.S. 766 (1983), neighbors of the Three-Mile Island nuclear power plant contended that the Nuclear Regulatory Commission should undertake a NEPA analysis to consider the psychological anxiety to the neighbors arising from a potential nuclear accident if one of the power plants were to be reactivated.  The Supreme Court held that NEPA was not applicable because the potential psychological harm arising from the federal action (reopening the plant) was simply too remote from the physical environment.  Id. at 773-74.  The issue in this case is not psychological harm or perception of private landowners, but rather the potential degradation to the physical environment arising from activities of private landowners

on private lands in the Recreation Area. To the extent that the USFS' regulations affect the nature and scope of those activities, there is a direct causal relationship between the regulations and the potential harm or impact to the physical environment.

In No Gwen Alliance v. Aldridge, 855 F.2d 1380 (9th Cir. 1988), the court held that the construction of a national defense communications network did not require a NEPA analysis to evaluate the impacts of nuclear war because the causal relationship between the construction of the network and nuclear war was too attenuated.

There is no such attenuation between the regulations controlling the use to which private land within the Recreation Area is put and the impacts of that use on the physical environment of the Recreation Area.

In Sylvester v. U.S. Army Corps of Engineers, 884 F.2d 394, 400 (9th Cir. 1989), the court held that an environmental analysis for a wetlands fill permit obtained to create a golf course need not consider environmental impacts to an entire resort complex of which the golf course was but a part, because there was no causal connection between the golf course and the remainder of the resort.

Here, the major federal action, *i.e.*, the Regulations, is intended to govern the use to which private lands may be put within the Recreation Area. Even within the Forest Service, as is noted *supra* at pp. 11-12, significant questions have been raised as to whether present uses, particularly the use of feedlots and cattle

grazing, are damaging the physical environment within the Recreation Area. There is a direct causal relationship between the Regulations which are mandated by the Act to protect ecological and recreational values, and the damage which may be occurring because of the uses to which the private lands are presently being put. The USFS' causation argument is without merit.

    (3) <u>Inaction</u>.

    The USFS contends that NEPA is not implicated in its decision to defer to state and local regulations with regard to feedlots and cattle grazing in the Recreation Area, because NEPA applies only to affirmative actions, not inaction. In <u>State of Alaska v. Andrus</u>, 591 F.2d 537 (9th Cir. 1979), the state had undertaken a wolf-kill program to protect the Western Arctic caribou herd. The wolves roamed federal land within the state's borders. A public interest group sought an order requiring the Secretary of the Interior to stop the killing on the premise that federal statutes empowered him to close federal lands to the wolf-kill. The Secretary declined to take any action to halt the wolf-kill. The public interest group thereafter demanded that the Secretary prepare an EIS pursuant to NEPA, on the ground that the Secretary's inaction constituted a major federal action producing environmental impacts. The court noted that no federal funds were to be spent, nor federal agents employed, in the wolf-kill program. The Secretary's refusal to exercise any authority or duty he might have possessed in the field

of wildlife management was, at the most, a non-use of a power of supervision.  The Court of Appeals held that the "district court was correct in declaring that no environmental impact statement was necessary before the Secretary could stay his hand and allow the State of Alaska to manage its own wildlife."  Id. at 541.  In reaching this holding, the court noted that the Ninth Circuit has not been receptive to arguments that impact statements must accompany inaction, or actions that are only marginally federal. On the other hand, the Court recognized that "NEPA mandates that federal agencies file impact statements when they propose to take a leading role in activity affecting the environment." Id. at 540.

Unlike Andrus, this case does not involve mere inaction by an agency that has some general power of supervision over federal land.  The role of the USFS in managing and enhancing the physical environment within the Recreation Area is specifically mandated by the Act, and this court, in Richmond, specifically ordered the USFS to take affirmative action to promulgate the final regulations necessary to implement the Act.  The Act mandates that the USFS take a leading role in regulating activity of private landowners on private land which affects the physical environment within the Recreation Area.  The action taken by the USFS in deferring to existing state and local regulations as its means of fulfilling its obligations to promulgate regulations regarding the use of feedlots and the grazing of cattle within the Recreation Area is best

characterized as "action" taken in response to the Act's mandate and this court's previous orders, not "inaction". It is a major federal action, and it has direct consequences on the physical environment.  I conclude that the USFS' reliance on <u>Andrus</u> is misplaced.

(4) <u>Preservation of the Physical Environment</u>.

The USFS contends a NEPA analysis is inappropriate because "the only environmental differences that could be hypothesized to result from the arrival of these regulations are positive ones, and not changes that are detrimental to the environment."  USFS Memo. in Support of Motion for Summary Judgment, p. 30.  To support this proposition, the USFS relies upon <u>Douglas County v. Babbitt</u>, 48 F.3d 1495 (9th Cir. 1995).  In that case, the court held that NEPA procedures do not apply to federal actions that do nothing to alter the natural physical environment.  "If the purpose of NEPA is to protect the *physical* environment, and the purpose of an EIS is to alert agencies and the public to potential adverse consequences to the land, sea or air, then an EIS is unnecessary when the action does not alter the natural, untouched physical environment at all." (Emphasis in original). <u>Id</u>. at 1505.

In <u>Douglas County</u>, the federal action involved the designation of a critical habitat under the Endangered Species Act.  Such a designation could only preserve, and potentially improve, the physical environment.  The USFS equates that action with its action

in deferring to state and local regulations in this case.  Such an equation is problematic at best.  As noted *supra* at pp. 11-12, the existing administrative record at the least suggests that there may have been a continued degradation of the physical environment arising from the use of feedlots and cattle grazing by private landowners in the Recreation Area.  Because it has failed to conduct an environmental evaluation pursuant to NEPA, the USFS has no basis for determining that its deferral to state and local regulations has preserved the status quo or improved the physical environment.  The absence of an administrative record by which this court or the public can determine the validity of the argument made by the USFS about the preservation or improvement of the physical environment in the Recreation Area suggests why it is incumbent on the USFS to conduct an environmental evaluation before simply deferring to existing state and local regulations.

In summary, I conclude that NEPA is applicable to the Regulations issued by the USFS.

<u>Is the NEPA Claim Barred by the Statute of Limitations?</u>

The court allowed plaintiff to file a second amended complaint to assert a claim under NEPA.  The USFS opposed the amendment, in part, based on the contention that the amendment would be a futility because the applicable six-year statute of limitations had already run.  28 U.S.C. § 2401(a).  The USFS assertion of the limitations defense was based on the assumption that the statute

began to run in 1994, when the Regulations were promulgated, which was more than six years before the second amended complaint, but not the original complaint, was filed. The court ruled that the NEPA claim related back to the original complaint and was therefore timely filed. The USFS now argues that the NEPA claim accrued when the final EIS, which analyzed the environmental impacts of the comprehensive management plan, was filed in 1981. Therefore, the NEPA claim was time-barred six years later in 1987.

This is the third lawsuit that has been filed since 1988 to address issues relating to the promulgation of Regulations by the USFS under the Act. In Hells Canyon Preservation Council v. Richmond, this court ruled that the USFS must promulgate final regulations under the Act within a certain time-frame. 841 F.Supp. at 1049. The Regulations promulgated following the Richmond decision are those that are challenged in this action. This court has found that NEPA is applicable to the promulgation of those Regulations. A claim for a violation of NEPA arising from the promulgation of the Regulations accrued on June 13, 1994. Based upon the ruling on plaintiff's motion to amend, plaintiff's NEPA claim is not time-barred.

<u>Conclusion</u>

For the reasons set forth above, I recommend that plaintiff's cross-motion (doc. 177) for summary judgment be GRANTED as to its NEPA claim and DENIED as moot as to its claim under the Act; that

PAGE 22 - FINDINGS AND RECOMMENDATION

USFS' cross-motion (doc. 190) for summary judgment be DENIED as to plaintiff's NEPA claim and denied as moot as to plaintiff's claim under the Act; and that USFS' motion (doc. 214) to strike plaintiff's expert witness declarations be DENIED as moot.

I recommend further that the matter be remanded to the USFS for further proceedings in compliance with NEPA.

<u>Scheduling Order</u>

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due on February 25, 2003. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due on March 11, 2003, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 11th day of February, 2003.

/s/ Dennis J. Hubel

_____

Dennis James Hubel
United States Magistrate Judge

PAGE 23 - FINDINGS AND RECOMMENDATION